UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

St. Jude Medical S.C., Inc.

     Plaintiff,

v.                                                      MEMORANDUM OPINION
                                                        AND ORDER
                                                        Civil No. 06-4547

Mark Hasty, Stephen V. Rode,
and Biotronik, Inc.

     Defendants.

_____

     Douglas R. Boettge and Thomas J. Conley, Leonard, Street and Deinard,
P.A. and James A. Gale, Steven E. Eisenberg and David Gonzalez, Feldman Gale,
P.A. for an on behalf of Plaintiff.

     George R. Wood, Littler Mendelson, P.C. for and on behalf of Defendants.
_____

     This matter is before the Court upon Plaintiff's motion for a temporary

restraining order.

Background

     Plaintiff St. Jude Medical S.C., Inc. ("St. Jude") sells cardiac care devices

that are manufactured by its affiliates.  Defendant Stephen Rode ("Rode") was

hired by St. Jude as a sales representative for St. Jude's cardiac rhythm

management devices ("CRMDs") in Georgia.  In May 2000, he entered in an

Employment Agreement with St. Jude ("Rode Employment Agreement").  This

agreement provided the following non-competition provision:

> Non-Competition for a period of one (1) year after the date of termination
> of employment with [St. Jude] for any reason, [Rode] will not directly or
> indirectly sell, demonstrate, promote, solicit or support the sale of, support
> or supervise the implantation or other use of, or otherwise have any
> involvement with the sale or use of any product which competes with any
> products which [Rode] sold or solicited the sale of during the term of his
> employment, to or with any customer upon whom [Rode] called during the
> last year of his employment.  For a period of one (1) year after the date of
> his termination of employment with [St. Jude] for any reason, [Rode] will
> not directly or indirectly influence or attempt to influence such customers
> to direct their business involving products sold by [Rode] to any
> competitor.

Rode Employment Agreement, at 4, ¶ 8.

The Rode Employment Agreement also contains a provision for injunctive

relief in the event the non-competition provision is breached, and the following

forum selection and choice of law clauses:

> Governing Law This Agreement will be governed by the laws of the state of
> Minnesota without giving effect to the principles of conflict of laws of any
> jurisdiction.

> Exclusive Jurisdiction Subject to the provisions of Section 10 above, all
> actions or proceedings relating to this Agreement will be tried and litigated
> only in Minnesota State or Federal Courts located in Ramsey County,
> Minnesota. [Rode] submits to the exclusive jurisdiction of these courts for
> the purpose of any such action or proceeding, and this submission can not
> be revoked. [Rode] understands that [he] is surrendering the right to bring
> litigation against [St. Jude] outside the state of Minnesota.

Id., at 6, ¶¶ 11G & H.

2

The Rode Employment Agreement also contained an arbitration provision:

 Arbitration Any disputes arising under or in connection with this Agreement will be resolved by final and binding arbitration to be held in Minneapolis, Minnesota in accordance with the rules and procedures of the American Arbitration Association. . . .

Id. at 5, ¶ 10.

In April 2006, Rode submitted his resignation to St. Jude and is now employed by Defendant Biotronik, Inc. ("Biotronik") in the state of Georgia. Biotronik is a competitor of St. Jude.  St. Jude asserts that some of its current employees have seen Rode at St. Joseph Hospital - which is one of the accounts Rode called on during his last year of employment.  Further, it is believed that Rode traveled to Europe and solicited business from a doctor affiliated with St. Mary's Health Care Systems, another customer called on by Rode during his last year of employment.  Other contacts have been witnessed as well.  In May 2006, St. Jude sent a letter to Biotronik, notifying it of Rode's non-compete agreement.

On October 12, 2006, Rode and Biotronik filed a lawsuit in the Middle District of Georgia.  In this lawsuit, a declaratory judgment action, Rode expressed his intention to solicit the sale of products for Biotronik that are competitive with the products he sold for St. Jude, to customers he contacted while a St. Jude employee.

Defendant Mark Hasty ("Hasty") began employment with St. Jude in January 1999.  He was also hired as a sales representative for St. Jude's CRMDs in

Georgia.  Hasty also entered into an Employment Agreement which contained a

non-competition clause:

> 7.1  For a period of one year (which I agree is a reasonable period of time) after my employment ends for any reason, I will not in any direct or indirect way, for myself or on behalf of or along with any third party, do any of the following in the Territory:
>
> 7.2  Directly or indirectly compete with you or your affiliates;
>
> 7.3  Sell, demonstrate, promote, solicit or support the sale of, support or supervise the implantation or other use of, or otherwise have any involvement with, the sale, delivery, manufacture, research, development, design, marketing, monitoring, tracking, or any other business aspect of any Competitive Product;
>
> 7.4  Induce, attempt to induce, entice or hire, or attempt to hire or employ any of your or your Affiliate's employees or representatives;
>
> 7.5  Solicit any Customers for the Products and Services that you provide to purchase any Competitive Products, or sell any Competitive Products to any Customers.

Hasty Employment Agreement, at 3,  § 7.

The Hasty Employment Agreement also contains choice of forum and

choice of law provisions similar to Rode's.  See Id., at 6, ¶¶ 15.1 and 15.2.

In February 2006, Hasty left the employ of St. Jude and began working for

Biotronik in Georgia.  Hasty and Biotronik also filed a declaratory judgment action

in Georgia in October 2006, which included allegations similar to that in the Rode

lawsuit.

On November 6, 2006, Ian McTurk, a current St. Jude employee saw Hasty in the purchasing department of South Georgia Medical Center in Valdosta, Georgia - one of the accounts Hasty worked during his last year of employment with St. Jude.

In November 2006, St. Jude filed this action in state court.  The action was later removed to this Court.  St. Jude now moves this Court for a temporary restraining order - enjoining Rode and Hasty from violating their respective Employment Agreements, and enjoining Biotronik from tortiously interfering with said agreements, and granting such other relief that the Court deems just and proper.

Since initially filing its motion for temporary injunctive relief, this Court became aware that the District Court in Georgia was currently addressing a motion for transfer and/or to dismiss the Rode action filed in Georgia.  This Court stayed the Minnesota case pending disposition of the motion before the Georgia Court.  On December 20, 2006, the Georgia Court transferred the Rode action to Minnesota on the basis that the forum selection clause in the Rode Employment Agreement was valid and enforceable.  The Georgia court further deferred the remainder of St. Jude's requests - to dismiss and to compel arbitration - to this Court.

Choice of Law

Prior to addressing the merits of the instant motion, it is necessary to determine which law applies.  St. Jude asserts Minnesota law should apply as both Employment Agreements contain valid choice of law provisions providing for the application of Minnesota law.  Defendants assert that Georgia law should apply, as that is where Rode and Hasty lived and worked while employed with St. Jude.

In diversity cases, the forum state's choice of law rules apply.  Ferrell v. West Bend Mut. Ins. Co., 393 F.3d 786, 796 (8th Cir. 2005).  Applying Minnesota's choice of law analysis, the first issue to be addressed is whether there is an actual conflict between the legal rules of the two states.  Nodak Mut. Ins. Co. v. American Family Ins. Co., 590 N.W.2d 670, 672 (Minn. Ct. App. 1999).  "An actual conflict exists if choosing the rule of one state or the other is 'outcome determinative.'" Id.

St. Jude argues that with respect to the issues in this case, there is only a "false conflict" - because the agreements at issue could be found enforceable under either Minnesota or Georgia law.  Both Minnesota and Georgia recognize non-competition agreements as a partial restraint of trade and must therefore be strictly construed.  Compare National Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982) (non-competition agreements are looked upon with disfavor, and are carefully scrutinized as they are considered a partial restraint of

trade) with <u>Keener v. Convergys Corp.</u>, 342 F.3d 1264, 1268 (11th Cir.

2003(Georgia law applies strict scrutiny to restrictive covenants in employment

contracts.)

The difference in state laws comes into play with the way the Minnesota

and Georgia courts deal with non-competition agreements that are found to be

unreasonable.  In Minnesota, the court may "blue pencil" the covenant to make it

reasonable and then would enforce it as so reformed.  <u>See</u> <u>eg.</u> <u>Hilligoss v. Cargill,</u>

<u>Inc.</u>, 649 N.W.2d 142, 147, n.8 (Minn. 2002).  In Georgia, however, the law does

not recognize the "blue pencil doctrine" and simply treats an unreasonable non-

compete provision as void.  <u>Advance Technology Consultants, Inc. v. Roadtrac,</u>

<u>LLC</u>, 551 S.E.2d 735, 738 (Ga. Ct. App. 2001).

St. Jude argues that what a court may or may not do given a certain finding

(reasonable or unreasonable non-compete) is the outcome, but it does not

determine the outcome.  Rather, what determines the outcome is the legal

standard by which the claim is addressed, and as noted above, both Minnesota

and Georgia courts will enforce a non-compete agreement if it is reasonable and

necessary to protect the employer's legitimate business interests.  Defendants

argue that the conflict is substantive, and asserts that the Georgia court has already so found.[1]

The Court finds that an actual conflict does exist with respect to the manner in which Minnesota and Georgia courts review non-compete agreements.

Next, the Court must ensure that the law of both states can be constitutionally applied.  Jepson v. General Cas. Co. of Wisconsin, 513 N.W.2d 467, 469-470 (Minn. 1994).  Defendants argue that Minnesota law should not be applied because there is no significant contact or significant aggregation of contacts, creating state interests.  Defendants argue Minnesota has virtually no connection to this case because neither Rode nor Hasty worked in Minnesota and the relevant events took place in Georgia and the witnesses are located in Georgia.

In this case, however, the employer is a Minnesota corporation.  In addition, there are choice of law provisions in both employment agreements providing for the application of Minnesota law.  The parties thus contracted to have Minnesota law govern any claims arising out of their respective Employment Agreements.  "Minnesota traditionally enforces parties' contractual choice of law provisions.  Minnesota courts have consistently expressed a commitment to the rule that the

---

[1]Defendants refer to a recent decision in Brewer v. St. Jude Medical, S.C., Inc., Civil Action No. 1:06-CV-02344 (N.D. Ga. Jan. 5, 2007) in which the district court confirmed an arbitration order that determined a substantially similar non-compete agreement was held unenforceable under Georgia law.

parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern." <u>Hagstrom v. Am. Circuit Breaker Corp.</u>, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994) (citations omitted).   No evidence has been presented in this case that the parties did not act in good faith or that one acted with an intent to evade the law.   Nor is it dispositive that the employees in this case both have no connections with Minnesota, and worked in Georgia. Minnesota courts have enforced Minnesota choice of law provisions in contracts signed by former employees based in another state. <u>See</u> <u>eg.</u> <u>Minn. Mining & Mfg. Co. v. Kirkevold</u>, 87 F.R.D. 324, 331 (D. Minn. 1980); <u>Guidant Sales Corp. v. Niebur</u>, 2001 WL 1636502 (D. Minn. Oct. 18, 2001); <u>West Publishing Corp. v Stanley</u>, 2004 WL 73590 (D. Minn. Jan. 7, 2004).

As an actual conflict exists, and the laws of both states can be constitutionally applied, the Court must now apply a five factor test to determine which law should govern. <u>Milkovich v. Saari</u>, 295 Minn. 155, 203 N.W.2d 408 (1973).   These factors are: 1) predictability of results; 2) maintenance of interstate order; 3) simplification of the judicial task; 4) advancement of the forum state's interests; and 5) application of the better rule of law. <u>Id.</u>, 203 N.W.2d at 412.   The factors are not to be mechanically applied, but are meant "to prompt the courts to carefully and critically consider each new fact situation and explain in a straightforward manner their choice of law." <u>Jepson</u>, 513 N.W.2d at 470.

A.  Predictability of Results

This factor "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." Medtronic. Inc. v. Advanced Bionics Corporation, 630 N.W.2d 438, 454 (Minn. Ct. App. 2001)(citation omitted).  "The factor applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." Id.

In Medtronic, the court determined this factor weighed in favor of Minnesota law, where the plaintiff and the defendant employee had entered into an employment agreement that contained a choice of law provision for application of Minnesota law.  Id.

As discussed above, there is a choice of law provision in both the Rode and Hasty Employment Agreements.  Accordingly, the Court finds that this factor weighs in favor of applying Minnesota law.

B.  Maintenance of Interstate Order

This factor requires the Court to determine whether application of Minnesota law would "manifest disrespect for [Georgia's] sovereignty [or visa versa] or impede the interstate movement of people and goods." Id. at 455.  The goal "is to maintain a coherent legal system, in which the states strive to sustain,

rather than subvert, each other's interests in areas where their own interests are less strong."  Id.

Defendants argue that this factor weighs in favor of application of Georgia law, given Georgia's strongly held public policy concerning non-compete agreements.   However, Minnesota also has strong interests in having its contract laws enforced.  In Medtronic the court noted "[b]oth parties filed suit in the state that best fits their desired outcomes.  Therefore this factor favors neither state." Id.  The same is true in this case.

C.  Simplification of Judicial Task

This factor considers the ease of the courts in applying another state's laws. The judicial task is simplified when Minnesota courts apply Minnesota law.  Id. Accordingly, this factor weighs in favor of Minnesota law.

D.  Advancement of the Forum's Governmental Interests

This factor is designed to ensure that Minnesota courts will not have to apply a state law that is "inconsistent with Minnesota's concept of fairness and equity."  Id.  "Minnesota's governmental interests will most clearly be advanced by application of Minnesota law."  Id.  A significant policy interest of Minnesota is that "people should get the benefit of the contracts they enter into, nothing less and nothing more. Jepson, 513 N.W.2d at 472.

Defendants attempt to distinguish Medtronic and its progeny because those

11

cases involved non-compete agreements entered into between Minnesota

corporations and employees who worked and resided in Minnesota.  Whereas in

this case, Rode and Hasty worked and resided in Georgia while employed by St.

Jude.  This is a distinction without a difference, however.

As discussed above, Minnesota has a strong governmental interest in having

its contract laws enforced.  Other Minnesota courts have recognized this interest,

and have enforced non-compete agreements even though the employee worked

and resided in another state.  See, eg., Niebur supra; Stanley, supra.  Accordingly,

this factor weighs in favor of application of Minnesota law.

E.  Application of the Better Rule of Law

This factor is generally addressed only if the application of the four previous

factors are not determinative.  Shumacher, at 692.  The better rule of law is

intended to be the rule that made "good socio-economic sense for the time when

the court speaks."  Jepson, at 473.  As three of the above factors weigh in favor of

application of Minnesota, the Court will not address this last factor.

Standard

The Eighth Circuit has established the following analysis to be used in

considering a request for preliminary injunctive relief:

> [W]hether a preliminary injunction should issue involves
> consideration of (1) the threat of irreparable harm to the movant; (2)
> the state of balance between this harm and the injury that granting

>the injunction will inflict on other parties litigant; (3) the probability
>that movant will succeed on the merits; and (4) the public interest.

Dataphase Sys., Inc. v. C. L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981); accord

Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1090 (D. Minn. 1981), aff'd, 684

F.2d 565 (8th Cir. 1982).

1.   Irreparable Harm

St. Jude asserts it will be irreparable harmed if the requested injunctive

relief is not issued, because it will lose valuable business relationships and good

will.   It has submitted evidence which demonstrates Rode and Hasty have been in

contact with customers that are prohibited under the non-competes.  In addition,

the declaratory judgment actions filed in Georgia include allegations which

demonstrate a continued desire to breach the non-compete provisions.

Defendants argue that economic loss is not sufficient to establish irreparable

harm. In support, Defendants cite the Court to Unisource Worldwide, Inc. v.

Schroeder, 2006 WL 3030887 (D. Minn. 2006).  This case is distinguishable on its

facts, however, as the Court found the non-compete agreement was not binding

on the defendant employee.

Minnesota courts consistently hold that irreparable injury can result from

the mere breach of a non-compete agreement. See, e .g. Cherne Indus., Inc. v.

Grounds & Assoc., Inc., 278 N.W.2d 81 (Minn.1979); Retek, Inc. v. Cox, 2003 WL

22037709, at *4 (D.Minn.2003); Medtronics, 630 N.W.2d at 452 (finding

irreparable harm from solicitation of a former employer's existing or future customers). This factor thus weighs in favor of the requested injunctive relief.

    2.  Likelihood of Success on the Merits.

    St. Jude argues that with respect to its claims against Rode and Hasty, it is likely to prevail as the non-compete agreements serve a legitimate employer interest and are not broader than necessary to protect this interest. <u>Kallok v. Medtronic, Inc.</u>, 573 N.W.2d 356, 361 (Minn. 1998). The terms are for one year, and are necessary to protect St. Jude's interests in its goodwill and customer relationships. Moreover, the agreements are reasonable as they only prohibit Rode and Hasty from selling competing products to customers with whom they developed a business relationship during their last year of employment with St. Jude.

    St. Jude has also presented evidence from some of its current employees which demonstrates that Rode and Hasty have been contacting clients that it had developed a business relationship with as employees of St. Jude during the last year of their employment.

    Based on the above, the Court concludes that St. Jude has met its burden of showing a likelihood of success on the merits of its claims for breach of contract and that both the temporal and geographic scope of the restrictive covenants are reasonable.

With respect to its claim of tortious interference of contract against Biotronik, St. Jude argues it is likely to succeed on the merits.  The elements of such cause of action are 1) the existence of a contract; 2) Biotronik's knowledge of the contract; 3) intentional procurement of its breach; 4) without justification; and 5) damages.  <u>Kallok</u>, 573 N.W.2d at 362.

Defendants argue St. Jude is not likely to succeed on this claim because there is no evidence that Biotronik intentionally procured the breach of the non-compete agreements.  The fact that Rode and Hasty may have been seen contacting prior customers does not implicate Biotronik.

The Court finds that St. Jude has met its burden of showing likelihood of success on the merits of its tortious interference claim against Biotronik.   St. Jude has demonstrated that Biotronik knew of the non-compete agreements, and intentionally interfered with these agreements by failing to ensure that Hasty and Rode did not violate the non-compete provisions, and in fact demonstrated a desire to breach the non-compete agreements as indicated by the allegations in the its declaratory judgment complaints filed in Georgia.  Defendants have not provided any justification for such interference.

3.  Public Policy

Public policy favors both enforcing contracts and promoting competition, thus this factor does not weigh for or against injunctive relief.  <u>Guidant Sales Corp. v. George</u>, 2001 WL 1491317, *8 (D. Minn. 2001).

4.  Balance of Harms

St. Jude argues this factor weighs in favor of injunctive relief.  If the requested relief is granted, both Rode and Hasty are free to solicit any customer other than those with whom they had contact during their last year of employment with St. Jude.

Defendants argue that if the injunctive relief is granted, it will significantly harm their right to earn a living, as both reside in Georgia and call upon customers in the geographic territory covered by the non-compete.

The Court finds that this factor weighs in favor the requested injunctive relief.  The Court has already determined that the non-compete agreements are reasonable, and St. Jude will suffer irreparable harm if such agreements are not enforced.  Hasty and Rode, on the other hand, maintain their employment and are free to solicit customers it did not have contact with in the last year of employment with St. Jude.  In addition, as both Rode and Hasty terminated their employment with St. Jude in early 2006, the terms of any injunction order will be

relatively short, as the one year period provided in the non-compete agreements will soon expire.

IT IS HEREBY ORDERED:

1.      St. Jude Medical S.C., Inc.'s Motion for a Temporary Restraining Order is GRANTED.

2.      The Employment Agreement entered into between St. Jude Medical S.C., Inc. and Stephen V. Rode effective May 30, 2000 is valid and enforceable.

3.      Defendant Stephen V. Rode is enjoined from violating his Employment Agreement with St. Jude Medical, S.C., Inc.

4.      In particular, Defendant Stephen V. Rode is enjoined for 365 days from the date of his termination with St. Jude Medical, S.C., Inc. from directly or indirectly selling, demonstrating, promoting, soliciting or supporting the sale of, supporting or supervising the implantation or other use of, or otherwise having any involvement with the sale or use of any product which competes with any products which Stephen V. Rode sold or solicited the sale of during the term of his employment with St. Jude Medical, S.C., Inc. to or with any customer upon whom Stephen V. Rode called during the last year of his employment.

17

5.      Defendant Stephen V. Rode is enjoined for 365 days from the date of his termination of employment with St. Jude Medical, S.C., Inc. from directly or indirectly influencing or attempting to influence such customers to direct their business to any competitor of St. Jude Medical, S.C., Inc. in the territory assigned to Stephen V. Rode during the last year of his employment with St. Jude Medical, S.C., Inc.

6.      Any dispute concerning Defendant Stephen V. Rode is referred to arbitration pursuant to the terms of the arbitration clause in his Employment Agreement.

7.      This Order is binding upon Stephen V. Rode, his affiliates, successors and assigns, and his agents, servants, employees, representatives, attorneys, and persons in active concert or participation with them, including but not limited to his employer, Biotronik Inc.

8.      The Employment Agreement entered into between St. Jude Medical S.C., Inc. and Mark Hasty effective January 25, 1999 is valid and enforceable.

9.      Defendant Mark Hasty is enjoined from violating his Employment Agreement with St. Jude Medical, S.C., Inc.

10.     In particular, Defendant Mark Hasty enjoined for 365 days from the date of his termination with St. Jude Medical, S.C., Inc. from directly

18

or indirectly selling, demonstrating, promoting, soliciting or supporting the sale of, supporting or supervising the implantation or other use of, or otherwise having any involvement with the sale or use of any product which competes with any products which Stephen V. Rode sold or solicited the sale of during the term of his employment with St. Jude Medical, S.C., Inc. to or with any customer upon whom Mark Hasty called during the last year of his employment.

11.   Defendant Mark Hasty is enjoined for 365 days from the date of his termination of employment with St. Jude Medical, S.C., Inc. from directly or indirectly influencing or attempting to influence such customers to direct their business to any competitor of St. Jude Medical, S.C., Inc. in the territory assigned to Mark Hasty during the last year of his employment with St. Jude Medical, S.C., Inc.

12.   This Order is binding upon Mark Hasty, his affiliates, successors and assigns, and his agents, servants, employees, representatives, attorneys, and persons in active concert or participation with them, including but not limited to his employer, Biotronik Inc.

13.   Defendant Biotronik, Inc. is enjoined from tortiously interfering with the Employment Agreements entered between St. Jude Medical, S.C.,

Inc. and Stephen V. Rode and St. Jude Medical, S.C., Inc. and Mark Hasty.

14.    This Order is binding upon Biotronik, Inc., their affiliates, successors and assigns, and their agents, servants, employees, representatives, attorneys, and persons in active concert or participation with them.

15.    This Order is effective upon the date recited below and shall remain in effect until further order of this Court, provided that, within ten days of the date of this Order, St. Jude Medical, S.C., Inc. post a bond with the Clerk of this Court, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, in the sum of one hundred thousand dollars ($100,000).

Date: January 11, 2007

s/ Michael J. Davis
Judge Michael J. Davis
 United States District Court